UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK    15 cv 402

| | |
|---|---|
| DR. ANDRAS ERDEI, *Pro Se*           ) | Index No.:    JUDGE NATHAN |
| Plaintiff,                                        ) | |
|                                                       ) | |
| v.                                                 ) | **COMPLAINT** |
|                                                       ) | **AND DEMAND** |
|                                                       ) | **FOR JURY TRIAL** |
| LUFTHANSA GERMAN AIRLINES,  ) | |
|                                                       ) | |
| Defendant.                                    ) | |

### I. Preliminary Statement

Plaintiff, dr. Andras Erdei, *Pro Se*, brings this action against a German company doing business in New York under the name Lufthansa German Airlines (hereinafter "Lufthansa"), also known as Deutsche Lufthansa AG, demands a jury trial and complains as follows:

1.     Plaintiff, dr. Andras Erdei is a frequent traveler, who is concerned about the erosion of passengers' rights guaranteed under an international treaty to which the United States is a signatory to, specifically, the Convention for the Unification of Certain Rules for International Carriage by Air, also known as the Montreal Convention (hereinafter "Convention").

2.     In particular, Plaintiff is concerned that Lufthansa, as the most dominant European airline, is refusing to abide by the Convention and systematically misled and continues to mislead Plaintiff and millions of passengers around the world, including in the United States, by citing irrelevant "internal policies" in lieu of the treaty provisions when it comes to compensating passengers for delayed or damaged checked bags.

3. Lufthansa repeatedly tries to set "internal policy" limits on liability based on the length of the delay in delivering a checked bag, or fix a limit of 50 Euros of liability, deny compensation based on the passengers' residence or altogether deny liability for a bag that was delivered damaged after being checked in unharmed.

4. The limits of liability set by Article 22 of the Montreal Convention for delayed or damaged bags is 1,131 SDRs (approximately $1,600 on January 19, 2015). Article 26 of the Convention specifically states that any provision tending to relieve the carrier of liability or to fix a lower limit than is laid down in the Convention shall be null and void.

5. Despite very clear language of the Convention and guidance from multiple courts before which Defendant contested delayed and damaged checked bag cases against Plaintiff, Defendant still refuses to compensate Plaintiff in the event his checked bag is damaged in transit.

6. More importantly, Lufthansa seriously violates Plaintiff's civil rights and frustrates the effective enforcement of the Convention by banning Plaintiff from its flights for the openly admitted reason of him successfully enforcing his rights under the Convention too many times.

7. The banning of Plaintiff from three European carriers is not only unwarranted, and a blatant retaliation against Plaintiff, but unreasonably limits the options Plaintiff has to travel between many parts of the world. The banning of a passenger from flying simply due to their exercising their civil rights afforded to them under various laws is completely unacceptable in a rule of law.

8. The banning of passengers from flying with certain airlines is a most extreme option which must not be taken lightly and exercised only in instances that

endanger the safety of air transportation. No airline has ever gone as far as Lufthansa has, and dared ban a passenger for the non-safety reason of exercising his rights under the Convention too often.

9. The seriousness of Defendant's action is illustrated by the fact that if every airline were allowed to ban Plaintiff or anyone else for exercising civil rights under the Montreal Convention, then not only would the Convention be an empty treaty, but the banned individuals would be unable to travel on an airplane.

10. Plaintiff has suffered considerable harm as a result of Defendant's actions and demands, in addition to injunctive and declaratory relief, monetary damages and punitive damages in this matter to deter Lufthansa in the future from abusing its power and blatantly disregard the provisions of the Convention and ban passengers who are aware of and insist on exercising their civil rights.

## II. Jurisdiction and Venue

11. The Court has original jurisdiction under the provisions of 28 U.S.C. §1331.

12. The Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201.

13. Venue is proper in this district under 28 U.S.C. §1391(d).

## III. Parties

14. Plaintiff is a resident of New York.

15. Defendant is a German corporation in the airline industry, doing business around the world, including the United States and the State of New York.

## IV. Statement of Facts

16. Plaintiff is an active traveler, who has been flying regularly with Lufthansa, Austrian Airlines and Swiss International Air Lines, all of whom are members of Miles and More, an airline loyalty program for nearly 20 years. Plaintiff was a status member of Miles and More for most of this time.

17. Plaintiff has experienced multiple, but standard problems with airline service over the years, such as delayed or lost luggage, delayed or cancelled flights. When encountered, Plaintiff reported problems with airline service and demanded compensation per the Convention.

18. On multiple occasions, Lufthansa refused to abide by the provisions of the Montreal Convention, and unlawfully cited as grounds for its refusal, certain "internal policies".

19. Several times Plaintiff had to resort to legal action to enforce his rights provided under the Convention and other laws of the United States. Without exception, Plaintiff had successfully litigated all of his claims against Lufthansa.

20. Lufthansa was found to have wrongfully denied Plaintiff an upgrade on its plane due to his meal preference and ordered to pay damages on June 30, 2011. (SC3557/2010)

21. In a letter dated July 14, 2011, two weeks after Lufthansa was found to have wrongfully denied Plaintiff an upgrade on its flight due to his meal preference and ordered to pay him damages, Miles and More notified Plaintiff that it has agreed with Defendant to terminate Plaintiff's membership in Miles and More without explanation. It indicated that the termination "extends to the long-term future" and that "renewed participation in Miles and More is inadmissible."

22. Despite Plaintiff's unlawful termination from the Miles and More program, he continued to travel with Lufthansa. In turn, Lufthansa continued to deny him his rights under the Montreal Convention whenever his checked bag was either delayed or damaged.

23. Lufthansa refused to compensate Plaintiff for damages caused by the destruction of his checked bag and the delay in delivering his salvaged possessions. Action was commenced by Plaintiff in New York City Small Claims Court, which was subsequently removed by Defendant to a United States District Court in the Southern District of New York. (11 Civ. 1028 PAE) Lufthansa lost this case as well. Federal Judge Paul A. Engelmayer summed up the outcome of the dispute as a "total victory for Plaintiff and complete capitulation by Defendant."

24. Before federal district judge Engelmayer, Lufthansa indicated that it has the power to ban Plaintiff from its aircrafts for any reason whatsoever. Plaintiff, and more importantly Judge Engelmayer disagreed, and strongly advised Lufthansa to refrain from banning Plaintiff from its flights without a legitimate reason.

25. Following its defeat in federal court, Lufthansa continued denying Plaintiff compensation due under the Convention several times, and was sued again. This time Lufthansa did not wish to remove the case to federal court, but the result in small claims court was the same. Plaintiff prevailed. (SC1479/2012)

26. On January 18, 2013 Plaintiff flew with Lufthansa flight LH 410 from Munich to New York. Following his arrival, Plaintiff found that one of his checked bags was damaged, which he reported to Lufthansa on January 25, 2013, within the time limit set forth by the Montreal Convention.

27. On April 3, 2013, Lufthansa informed Plaintiff via email, that his complaint was not submitted within the requisite time period and is therefore denied.

28. On November 15, 2013, Lufthansa informed Plaintiff, that based upon the number of claims and lawsuits commenced over the past five years against Lufthansa and its affiliates, Plaintiff is banned from flying with Lufthansa, Swiss International Air Lines and Austrian Airlines.

29. Lufthansa never entered into any kind of dialog to determine how it could improve its services provided to Plaintiff. Instead it just provided him with a cynical letter stating among other things: "Your repeated, demonstrated dissatisfaction with the services provided you by the Group Carriers is duly noted. Given this apparent inability to ever serve you to your satisfaction, the Group Carriers have determined that neither you nor your property shall be welcome aboard any flights operated by the Group carriers in the future."

30. Defendant never indicated to Plaintiff what steps it took to limit the number of delayed or damaged bag incidents, and certainly did not indicate why it believes that Plaintiff should be satisfied and/or not complain whenever his checked bag is late, damaged or he is unlawfully denied an upgrade due to his meal preference.

31. Defendant never explained why initiating any number of successful claims or lawsuits constitutes a good cause to ban someone from the company's flights. Defendant did not indicate which section of Lufthansa's own Conditions of Carriage allows the airline to ban Plaintiff from Lufthansa flights in the future. Defendant also did not indicate what authority it has to ban Plaintiff from the flights of Austrian Airlines or Swiss International Air Lines.

## V. Causes of Action

### First Cause of Action

### Violation of Article 17 of the Montreal Convention

32. Plaintiff incorporates by reference the allegations in Paragraphs 1-31 above.

33. Article 17 of the Montreal Convention specifically states that a carrier is liable for damage caused to checked baggage. The limit for the damage is set at 1,131 SDRs, which is approximately $1,600.

34. Article 31 requires that complaint be made to the carrier within 7 days of receipt of the checked bag. Plaintiff made a complaint about his damaged checked bag within the prescribed period and demanded to be compensated in the amount of $300.

35. Defendant unlawfully denied Plaintiff's claim.

### Second Cause of Action

### Interference with Plaintiff's Rights under the Montreal Convention

36. Plaintiff incorporates by reference the allegations in Paragraphs 1-35 above.

37. It is the intention of the Convention to provide passengers such as Plaintiff, certain protections pertaining to international travel.

38. Airlines are not allowed to ban passengers for exercising these rights, since doing so would effectively render the protective provisions "toothless". The protections of the Convention would be illusory if any airline at any time could ban a passenger for exercising the rights afforded by the Convention.

39. There are only a finite number of airlines in the world and often only one or only a few service certain destinations. By allowing airlines to ban passengers who

dare to exercise their rights under the treaty, the airlines can effectively enjoy immunity from the protections of the Convention, since no reasonable person would risk exercising the rights at the possible cost of being banned from flying.

## Third Cause of Action

### Interference with Plaintiff's Right to Bring Suit under U.S. Treaty

40. Plaintiff incorporates by reference the allegations in Paragraphs 1-39 above.

41. It is the intention of the Convention to provide passengers such as Plaintiff, certain protections pertaining to international travel. These protections are not to be taken lightly and airlines should not unlawfully interfere with them.

42. It violates Plaintiff's most basic rights to be banned from flying by a common carrier for exercising his rights under a treaty to which the United States is a party to. Allowing airlines to retaliate against Plaintiff or anyone else for exercising their rights under the Convention by banning them from flying is malicious, abusive and cannot be tolerated in a rule of law.

## Fourth Cause of Action

### Interference with Plaintiff's Constitutional Right to Travel

43. Plaintiff incorporates by reference the allegations in Paragraphs 1-42 above.

44. Recent federal rulings have made it very clear that international air travel is a basic civil right and banning someone from flying without due process is a draconian sanction that severely impacts peoples' constitutionally-protected liberties. The courts have rejected the argument that inclusion on a no-fly list was merely a restriction on the most "convenient" means of international travel.

45. The recent federal rulings highlight the importance of making sure someone from the public does not unreasonably get banned from flying. Although Defendant's action does not constitute a government enforced no-fly restriction, it is equivalent to a partial ban, and in the case of travel to or from Germany, Switzerland and Austria is a very serious restriction on Plaintiff's right to travel.

46. Not only is it now more expensive and less convenient for Plaintiff to travel to many of these destinations, it must be emphasized that a partial ban is from a legal perspective no better in any way than a complete ban on travel, since if one common carrier is allowed to take such a drastic step in response to an individual exercising his rights under the Convention, then there is nothing preventing the others from doing the same.

47. Unlike fruit stands in New York City, there is a very limited number of airlines in the world that serve certain destinations. Passengers do not have many choices when it comes to air transportation. Thus, getting banned from flying Lufthansa and its affiliates is effectively equivalent to getting banned from half the airplanes in certain parts of Europe.

48. Plaintiff and other passengers should not be allowed to be intimidated by airlines to chose between either flying with them and effectively waving their rights under the Convention or risk not flying at all by exercising their civil rights.

## Fifth Cause of Action

### Interference with the Application of the Montreal Convention

49. Plaintiff incorporates by reference the allegations in Paragraphs 1-48 above.

50. Defendant's unprecedented action to ban Plaintiff from its planes is effectively interference by Lufthansa with the application of the Convention. If Defendant's action is allowed to stand, it will encourage it to become even bolder in the future and take similar steps against any frequent passenger who is noticeably aware of and systematically exercises his or her rights under the Convention.

51. No reasonable passenger would exercise his rights under the Convention at the risk of getting banned, thus indirectly, Lufthansa will be able to unlawfully interfere with and limit the application of the Convention if its action to ban Plaintiff is allowed to stand.

## Sixth Cause of Action

### Unlawful Retaliation by Defendant against Plaintiff

52. Plaintiff incorporates by reference the allegations in Paragraphs 1-51 above.

53. Defendant's openly admitted reason for banning Plaintiff from its flights is him exercising his rights under the Convention (and prevailing every time).

54. Similar to how the Supreme Court has read into civil rights, such as Title VII, despite the lack of specific language in the statute, individuals' rights against retaliation, Plaintiff and other similarly situated persons should be free from retaliation for exercising their rights under the Convention.

55. Defendant has unlawfully retaliated against Plaintiff for him exercising his rights under the Convention, the later of which is intended to provide basic "civil rights" to passengers in international travel. If Defendant's action is left unchecked and it is allowed to retaliate against individuals exercising their rights under the Convention, then much like Title VII, the entire purpose of the treaty would be completely undermined.

Seventh Cause of Action

Breach of Lufthansa's General Conditions of Carriage

56. Plaintiff incorporates by reference the allegations in Paragraphs 1-55 above.

57. Lufthansa's own Conditions of Carriage list the conditions under which it may refuse to carry passengers. Article 7 of the Conditions of Carriage clearly enumerates those reasons, and not surprisingly, exercising rights (regardless of the outcome, but in Plaintiff's case incidentally successfully) provided by the Convention does not fall under any of the categories set forth by the airline.

## VI. Request for Relief

Good cause having been shown, Plaintiff requests the following relief:

1. Order defendant to pay Plaintiff $300 pursuant to the Montreal Convention for damages suffered as a result of his checked bag being damaged on January 18, 2013.

2. Enjoin Defendant from ever invoking its own "internal policies" in lieu of the Convention, especially to limit rights to compensation passengers are entitled to under the Convention.

3. Order Defendant to pay damages suffered as a result of Defendant unlawfully banning Plaintiff from flying with Lufthansa and its affiliates.

4. Award punitive damages to Plaintiff in the amount of $5,000,000 for the malicious, willful and wanton action of Defendant banning Plaintiff from its flights, violating Defendant's own Conditions of Carriage, retaliating against Plaintiff for exercising his rights under the Montreal Convention, interfering with Plaintiff's rights under the Montreal Convention, interfering with Plaintiff's civil right to bring suit under a U.S. Treaty, interfering with Plaintiff's constitutional right to travel, interfering with the

application of the Montreal Convention. The punitive damages are demanded in part to effectively deter in the future Defendant from attempting to frustrate the operation of the Convention and intimidate passengers from exercising their rights under the Convention.

5. Declare that Defendant may not ban a passenger from its flights for any reason not specifically listed in its Conditions of Carriage.

6. Declare that Defendant may not ban a passenger from its flights in response to him or her exercising the rights afforded by the Montreal Convention or any other laws of the United States.

7. Enjoin Defendant from ever denying Plaintiff boarding in the future in response to him exercising his rights under the Montreal Convention or any other laws of the United States.

8. Enjoin Lufthansa from taking any steps whatsoever which have the intention or effect of individually targeting or discouraging Plaintiff from traveling with Lufthansa or its affiliates in the future.

9. Award Plaintiff costs and fees pursuant to 28 U.S.C. §2412.

10. Grant Plaintiff such other and further relief as the Court deems just and proper.

Dated: January 20, 2015

*[signature]*

dr. Andras Erdei
Plaintiff, *Pro Se*
575 Lexington 4th floor
New York, NY 10022
E-mail: aaerdei@cal.berkeley.edu
Tel.: 212-300-5802
Fax: 212-358-2551