HOLLAND & KNIGHT LLP
Christopher G. Kelly
Sarah Gogal Passeri
31 West 52nd Street
New York, New York  10019
Tel.:    (212) 513-3200
Fax:    (212) 385-9010
Christopher.Kelly@hklaw.com
Sarah.Passeri@hklaw.com

*Attorneys for Defendant*
*Deutsche Lufthansa AG*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDRAS ERDEI,<br><br>                    Plaintiff, Pro Se<br><br>     – against –<br><br>LUFTHANSA GERMAN AIRLINES,<br><br>                    Defendant. | 15-CV-00402 (AJN)(MOH) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**<u>DEUTSCHE LUFTHANSA AG'S MOTION TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................. 2

MOTION TO DISMISS STANDARD.................................................................................. 3

ARGUMENT ......................................................................................................................... 4

POINT I        PLAINTIFF'S CLAIM UNDER ARTICLE 17 OF THE MONTREAL
               CONVENTION IS TIME-BARRED ...................................................... 4

POINT II       PLAINTIFF'S CLAIMS BASED ON LUFTHANSA'S ALLEGED
               INTERFERENCE WITH A U.S. TREATY MUST BE DISMISSED ................. 6

POINT III      LUFTHANSA CANNOT BE HELD LIABLE, AS A MATTER OF LAW,
               FOR "INTERFER[ING] WITH PLAINTIFF'S CONSTITUTIONAL RIGHT
               TO TRAVEL." ...................................................................................... 8

POINT IV       PLAINTIFF DOES NOT HAVE A CAUSE OF ACTION FOR
               RETALIATION ................................................................................... 10

POINT V        IN THE ABSENCE OF A CONTRACT, PLAINTIFF'S CLAIMS FOR
               BREACH OF A CONTRACT ARE ILLUSORY .................................. 11

CONCLUSION..................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asabor v. Archdiocese of N.Y.*,
  102 A.D.3d 524 (1st Dep't 2013) ........................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) ...................................................................3

*Baah v. Virgin Atlantic Airways Ltd.*,
  473 F. Supp. 2d 591 (S.D.N.Y. 2007) ...................................................................5

*Balbut v. Am. Airlines*,
  27 F. Supp.2d 146 (E.D.N.Y. 1997) ....................................................................11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 555, 578 (2007) ..............................................................................3

*Best v. BWIA West Indies Airways Ltd.*,
  581 F. Supp. 2d 359 (E.D.N.Y. 2008),
  *aff'd*, 307 Fed. Appx. 491 (2d Cir. 2009) ...........................................................5

*Booker v. BWIA West Indies Airways Ltd.*,
  307 Fed. Appx. 491 (2d Cir. 2009) .......................................................................5

*Califano v. Aznavorian*,
  439 U.S. 170 (1978) ..............................................................................................9

*City of Houston v. F.A.A.*,
  679 F.2d 1184 (5th Cir. 1982) ...............................................................................9

*Duay v. Cont'l Airlines, Inc.*,
  No. 10-cv-1454, 2010 WL 5342824 (S.D. Tex. Dec. 21, 2010)...........................5, 6

*Edem v. Ethiopian Airlines Enter.*,
  No. 08-cv-2597, 2009 WL 4639393 (E.D.N.Y. Sept. 30, 2009) ...........................7

*El Al Israel, Ltd. v. Tseng*,
  525 U.S. 155 (1999).............................................................................................5, 6

*Fishman v. Delta Air Lines, Inc.*,
  132 F.3d 138 (2d Cir. 1998).................................................................................5

*Flagg v. Yonkers Sav. & Loan Ass'n, FA*,
  296 F.3d 178 (2d Cir. 2005)................................................................................8, 9

*Gustafson v. Am. Airlines, Inc.*,
    658 F. Supp. 2d 276 (D. Mass. 2009) .......................................................................5

*Lee v. China Airlines, Ltd.*,
    669 F. Supp. 979 (C.D. Cal. 1987) .........................................................................9

*Louis v. Flagship Airlines, Inc.*,
    181 F.3d 79 (1st Cir. 1999)......................................................................................5

*Malek v. Societe Air France*,
    13 Misc.3d 723, 827 N.Y.S.2d 485 (N.Y. City Civ. Ct. 2006).................................5

*Miller v. Reed*,
    176 F.3d 1202 (9th Cir. 1999) .................................................................................9

*Nastych v. British Airways PLC*,
    No. 09-cv-9082, 2010 WL 363400 (S.D.N.Y. Feb. 2, 2010) ...................................7

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
    743 F.3d 11 (2d Cir. 2014).....................................................................................10

*Spencer v. Casavilla*,
    903 F.2d 171 (2d Cir. 1990)....................................................................................8

*Town of Southold v. Town of E. Hampton*,
    477 F.3d 38 (2d Cir. 2007)......................................................................................9

*United States v. Int'l Bhd. of Teamsters*,
    941 F.2d 1292 (2d Cir. 1991)..................................................................................8

**Statutes**

28 U.S.C. §2412 ...............................................................................................................2

42 U.S.C. § 200e-2(a) .....................................................................................................10

42 U.S.C. § 1985(3) ..........................................................................................................8

N.Y. Exec. Law § 296 .....................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ......................................................................................................3

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 3

Convention for the Unification of Certain Rules for the International Carriage by
Air, concluded at Montreal, Canada, May 28, 1999, *reprinted in* S. Treaty Doc.
No. 106-45, 1999 WL 33292734 .............................................................................. *passim*

## PRELIMINARY STATEMENT

Defendant DEUTSCHE LUFTHANSA AG (incorrectly sued herein as Lufthansa German Airlines) (hereinafter, "Lufthansa") respectfully submits this Memorandum of Law in support of its Motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claims brought against it by Pro-se Plaintiff Andras Erdei.

## STATEMENT OF FACTS

This action arises from a claim for, one, lost baggage during international travel and, two, multiple claims based on Lufthansa's commercial decision that it no longer wanted to contract with Plaintiff to travel on its flights due to Plaintiff's claims and lawsuits brought in the wake of virtually every interaction of any kind that Plaintiff had with Lufthansa.

Plaintiff contends that he is "an active traveler," who has experienced "multiple, but standard problems with airline service over the years."  Complaint, Dkt. Entry No. 1 ("Compl."), ¶¶ 16-17.  On multiple occasions, he experienced issues with the service provided by Lufthansa and demanded compensation both informally and by way of lawsuit.  *See id*., ¶¶ 17-19, 25.  The most recent complaint, which is, in part, the subject of this lawsuit, is that Lufthansa damaged one of Plaintiff's checked bags on his flight from Munich, Germany to New York, New York on January 18, 2013.  *Id.*, ¶ 26.  Following this claim, Lufthansa advised Plaintiff that due to its apparent inability to meet Plaintiff's exacting service standards, as evidenced by the inordinate number of complaints and lawsuits brought by Plaintiff in recent years, Lufthansa would no longer be welcoming Plaintiff aboard its flights.  *Id.*, ¶¶ 28-29.

Based on these facts, Plaintiff asserts seven causes of action against Lufthansa.  The First Cause of Action allegedly states a claim under the Montreal Convention for damage to checked baggage on a January 18, 2013 flight.  *See id.*, ¶¶ 34-35.  In the Second, Third, and Fifth Causes

of Action, Plaintiff claims that Lufthansa's "ban" of Plaintiff from future flights, and its basis for doing so, is a violation of the Montreal Convention. *See id.*, ¶¶ 39, 42, 51.  The Fourth Cause of Action asserts that Plaintiff has a Constitutional right to travel internationally, and that Lufthansa violated this right by banning him from its flights. *See id.*, ¶ 48.  The Sixth Cause of Action states that Lufthansa unlawfully retaliated against Plaintiff by banning him from its flights. *See id.*, ¶¶ 54-55.  Lastly, the Seventh Cause of Action asserts that Lufthansa breached its Conditions of Carriage by refusing to allow Plaintiff to fly on Lufthansa flights. *See id.*, ¶ 57.

Plaintiff seeks compensation for the alleged damage to his checked baggage (*see id.*, VI.1) and for the alleged ban of Plaintiff on future Lufthansa flights (*see id.*, VI.3); punitive damages in the amount of $5 million (*see id.*, VI.4); costs and fees pursuant to 28 U.S.C. §2412 (*see id.*, VI.9); injunctive relief banning Lufthansa from invoking its internal compensation policies (*see id.*, VI.2), from denying Plaintiff boarding on future flights (*see id.*, VI.7), and from taking steps to discourage Plaintiff from traveling on Lufthansa and its affiliates (*see id.*, VI.8); and lastly, a declaratory judgment that Lufthansa may not ban a passenger from its flights under its Conditions of Carriage or the Montreal Convention. *See id.*, VI.5 and 6.

## SUMMARY OF ARGUMENT

Each of Plaintiff's seven claims fail as a matter of law.  Plaintiff's claim for damage to his baggage is time-barred by the Montreal Convention's two-year limitations period. Plaintiff's three remaining Montreal Convention claims are not cognizable claims under the Convention. To the contrary, the Montreal Convention expressly provides that a carrier's right to refuse to enter into any contract of carriage is *not* barred by the Convention.  Additionally, Plaintiff has not and cannot state a claim against Lufthansa for interference with any Constitutional right to travel, unlawful retaliation, and breach of contract.  The U.S. Constitution does not recognize a

Constitutional right to international travel, and, even if it did, Plaintiff cannot assert such a claim against a private party absent a showing of state action—of which there is none here.  With respect to wrongful retaliation, Plaintiff cannot state a claim because his cause of action did not arise from his employment.   Finally, Plaintiff and Lufthansa do not have a contractual relationship, and therefore, Plaintiff cannot maintain a claim for breach of a contract that does not exist.

## MOTION TO DISMISS STANDARD

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) admits the facts as alleged in the complaint, but challenges a plaintiff's right to recovery under the stated facts.  While Fed. R. Civ. P. 8(a)(2) requires a pleading to contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 578 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted).  Moreover, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (citing *Twombly*, 550 U.S. at 555).  Under these standards, the Complaint must be dismissed for failure to state a claim against Lufthansa.

## ARGUMENT

### POINT I

### PLAINTIFF'S CLAIM UNDER ARTICLE 17 OF
### THE MONTREAL CONVENTION IS TIME-BARRED

Plaintiff's First Cause of Action for lost baggage is governed by a treaty of the United States known as the Convention for the Unification of Certain Rules for International Carriage by Air, concluded at Montreal, Canada, May 28, 1999, *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (hereinafter "Montreal Convention").   The Montreal Convention is an international treaty applicable to "all international carriage of persons, baggage or cargo performed by aircraft for reward."   Montreal Convention, Art. 1(1).   Article 1(2) defines "international carriage" as:

> any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party.

Here, as Plaintiff recognized in his Complaint, the transportation out of which the subject matter of this action arose was "international carriage" within the meaning of Article 1(2) of the Montreal Convention and, therefore, the rights and liabilities of the parties are exclusively governed by the provisions of this Convention.

Article 17 of the Montreal Convention makes the carrier liable "for damages sustained in case of destruction, or loss of, or damage to, checked baggage upon condition only that the event which caused the destruction, loss or damage, took place on board the aircraft or during any period within which the checked baggage was in the charge of the carrier."   Montreal Convention, Art. 17(2).   Because Plaintiff's claim for damage to his checked baggage falls squarely within the substantive scope of Article 17 of the Montreal Convention, Plaintiff's claims

4

are exclusively governed by the Convention, which precludes Plaintiff from bringing claims outside its terms and conditions.[1]  *See El Al Israel Airlines, Ltd.*, 525 U.S. 155, 175 (1999); *Booker v. BWIA West Indies Airways Ltd.*, 307 Fed. Appx. 491, 493 (2d Cir. 2009) (Montreal Convention preempted passenger's common law claims seeking damages for lost luggage); *Malek v. Societe Air France*, 13 Misc.3d 723, 726, 827 N.Y.S.2d 485, 487 (N.Y. City Civ. Ct. 2006) (same).

Article 35 of the Convention provides that "[t]he right to damages shall be extinguished if an action is not brought within ***two years***, reckoned from the date of the arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped." (Emphasis added).  This two-year period acts as a condition precedent to suit, and actions not brought within this period must be dismissed.  *See Duay v. Cont'l Airlines, Inc.*, No. 10-cv-1454, 2010 WL 5342824 (S.D. Tex. Dec. 21, 2010) (dismissing claim brought after the expiration of the two-year period proscribed by Article 35); *Gustafson v. Am. Airlines, Inc.*, 658 F. Supp. 2d 276, 288 (D. Mass. 2009) (same); *see also Louis v. Flagship Airlines, Inc.*, 181 F.3d 79 (1st Cir. 1999) (dismissing claim brought days past the two-year period proscribed by Article 29 of the predecessor Warsaw Convention); *Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 143 (2d Cir. 1998) (same).  The two-year condition precedent has been strictly construed and does not allow for tolling.  *See Duay*, 2010 WL 5342824, at *6; *Fishman*, 132 F.3d at 143-145.

---

[1]   Courts rely on cases interpreting the Warsaw Convention to interpret the corresponding Montreal Convention provisions.  *See, e.g., Best v. BWIA West Indies Airways Ltd.*, 581 F. Supp. 2d 359, 362 n.1 (E.D.N.Y. 2008), *aff'd*, 307 Fed. Appx. 491 (2d Cir. 2009) ("[T]he case law regarding a particular provision of the Warsaw treaty applies with equal force regarding its counterpart in the Montreal treaty."); *Baah v. Virgin Atlantic Airways Ltd.*, 473 F. Supp. 2d 591, 595-96 (S.D.N.Y. 2007) (same).

Plaintiff's Complaint alleges that his checked baggage was damaged at some point during his Lufthansa flight on January 18, 2013.  *See* Compl., ¶26, VI(1).  In order for Plaintiff to comply with Article 35 and timely bring an action against the airline, Plaintiff was required to file his action on or before January 18, 2015.  The dates are bright line, and not subject to ambiguity.  Because Plaintiff did not file this action until January 20, 2015, his claim for damage to baggage is time-barred and must be dismissed.  *See Duay, supra.*

**POINT II**

**PLAINTIFF'S CLAIMS BASED ON LUFTHANSA'S**
**ALLEGED INTERFERENCE WITH A U.S. TREATY MUST BE DISMISSED**

Plaintiff purports to bring three additional claims against Lufthansa for violations under the Montreal Convention.  Each of them fails.  Specifically Plaintiff claims that Lufthansa: (1) interfered with Plaintiff's rights under the Montreal Convention (Second Cause of Action), (2) interfered with Plaintiff's right to bring suit under the Convention (Third Cause of Action), and (3) interfered with the application of the Convention (Fifth Cause of Action).  Each cause of action is based on Lufthansa's business decision to decline to contract with Plaintiff on its flights due to its alleged inability to adequately meet Plaintiff's expectations, and each cause of action must fail because the Montreal Convention does not recognize a claim under these circumstances.

The Montreal Convention provides that "any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention." Montreal Convention, Art. 29; *see also Tseng*, 525 U.S. 155.  The Convention is all-encompassing. Chapter III of the Montreal Convention sets forth the only causes of action that a passenger may bring against a carrier, including death or injury of passengers and damage to baggage (Art. 17),

6

damage to cargo (Art. 18), and delay (Art. 19). Articles 20 and 21 outline the carrier's defenses to any claims, and Article 22 sets forth the limitation of damages. Additionally, Article 26 voids any attempt by the carrier to disclaim liability, and its counterpart, Article 29, precludes a passenger from asserting a claim outside the terms of the Convention. The Convention simply does not recognize a claim for interference with (i) a passenger's rights under the Convention, (ii) a passenger's right to bring suit, or (iii) application of the Convention.

Significantly, the Montreal Convention expressly provides all carriers with the "freedom to contract." Montreal Convention, Art. 27. The Convention provides that "[n]othing contained in this Convention shall prevent the carrier from refusing to enter into any contract of carriage …". Montreal Convention, Art. 27. The treaty simply does not require a carrier to enter into a contract of carriage with any passenger let alone a passenger whose dissatisfaction with Lufthansa has reached epic proportions, as his own pleading states. And Lufthansa was well within its rights, under the Convention, to decline to enter into a contract of carriage with Plaintiff.

For these reasons, Plaintiff's Second, Third, and Fifth Causes of Action fail as a matter of law.

Even if the Convention did recognize such claims, Plaintiff is not entitled to any damages under the Montreal Convention. Plaintiff's claims for damages are non-compensatory and punitive in nature. Article 29 expressly prohibits recovery for "punitive, exemplary or any other non-compensatory damages." Montreal Convention, Art. 29; *see also Nastych v. British Airways PLC*, No. 09-cv-9082, 2010 WL 363400, at *2 (S.D.N.Y. Feb. 2, 2010) ("Article 29 of the Montreal Convention prevents [plaintiff] from recovery for emotional distress or any other non-compensatory damages…"); *Edem v. Ethiopian Airlines Enter.*, No. 08-cv-2597, 2009 WL

4639393, at *8 (E.D.N.Y. Sept. 30, 2009) (limiting plaintiff's damages in a lost baggage claim to treaty limits).   Accordingly, Plaintiff's claims for non-compensatory and punitive damages likewise are precluded by the Convention itself.

## POINT III

### LUFTHANSA CANNOT BE HELD LIABLE, AS A MATTER OF LAW, FOR "INTERFER[ING] WITH PLAINTIFF'S CONSTITUTIONAL RIGHT TO TRAVEL."

Plaintiff's Fourth Cause of Action alleges that Lufthansa has interfered with Plaintiff's constitutional right to travel internationally by banning him from its flights.   This claim must fail, as a matter of law, on the grounds that Lufthansa is a private party engaged in commercial, not state, matters.

"Because the United States Constitution regulates only the government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"   *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991) (citation omitted).[2]   To qualify as state action, the conduct in question "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and "the party charged with the [conduct] must be a person who may fairly said to be a state actor."   *Id.* at 1296 (citation omitted); *see also Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 296 F.3d 178, 186 (2d Cir. 2005).

---

[2]   There is a minor exception to this general rule for constitutional claims brought pursuant to 42 U.S.C. § 1985(3), which prohibits conspiracies "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."   To state a claim under § 1985(3), however, a plaintiff must, *inter alia*, allege (1) a conspiracy, and (2) "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," neither of which are present—or alleged—here.   *See Spencer v. Casavilla*, 903 F.2d 171, 175 (2d Cir. 1990).

8

International travel is not an "exercise" of a "right or privilege created by the state," and an airline cannot "fairly be said to be a state actor." *Id.* Plaintiff has not alleged that Lufthansa's "ban" on his travel constitutes "state action." And it is clear that Plaintiff *could not* credibly make such assertions. For this reason alone, Plaintiff's claim must fail.

Even if Plaintiff could show "state action," his claim would fail because he has not been denied any constitutional right. As the Supreme Court explained, while "[t]he constitutional right of *interstate* travel is virtually unqualified. . . ., the 'right' of *international* travel has been considered no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment." *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978) (emphasis added); *see also Lee v. China Airlines, Ltd.*, 669 F. Supp. 979, 982 (C.D. Cal. 1987) ("*Aznavorian* makes clear that limitations upon international travel are to be evaluated under a rational basis test"). Even in the context of restrictions on *interstate* travel, however, courts have consistently held that "burdens on a single mode of transportation do not implicate the right to interstate travel," and "passengers do not possess 'a constitutional right to the most convenient form of travel.'" *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (quoting *Miller v. Reed,* 176 F.3d 1202, 1205 (9th Cir. 1999); *City of Houston v. F.A.A.*, 679 F.2d 1184, 1198 (5th Cir. 1982)). There is certainly no constitutional right to travel on a *particular* international airline. Accordingly, Plaintiff's claim that Lufthansa interfered with his "constitutional right" to international travel by not contracting with Plaintiff so he might fly on its specific product, fails for this reason, as well.

## POINT IV

## <u>PLAINTIFF DOES NOT HAVE A CAUSE OF ACTION FOR RETALIATION</u>

Plaintiff's Sixth Cause of Action alleges that Lufthansa "unlawfully retaliated against Plaintiff for him exercising his rights under the [Montreal] Convention."  No such cause of action exists.

While a claim of "unlawful retaliation" is recognized under both New York and Federal law, that cause of action is limited to employment actions.  Both Title VII of the Civil Rights Act of 1964 and Section 296 of the New York State Executive Code prohibit an employer from retaliating against an employee for opposing discriminatory employment practices.  *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014); *Asabor v. Archdiocese of N.Y.*, 102 A.D.3d 524, 528 (1st Dep't 2013).  Contrary to Plaintiff's suggestion that "the Supreme Court has read . . . individuals' rights against retaliation" into Title VII "despite the lack of specific language in the statute" (*see* Compl. at ¶ 54), Title VII, as well New York State Executive Law § 296, specifically prohibit an *employer* from retaliating against an *employee* for opposing practices forbidden by law.  *See* 42 U.S.C. § 200e-2(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ."); *see also* N.Y. Exec. Law § 296.  Plaintiff's claim falls well outside the employment context covered by Title VII or N.Y. Exec. Law § 296, and no similar statute prohibits retaliation for "exercising . . . rights under the [Montreal] Convention."  *See* Compl., ¶ 54.

Because no such cause of action is recognized by either New York or Federal law, and Plaintiff is most decidedly not an employee of Lufthansa, Plaintiff's Sixth Cause of Action must be dismissed.

**POINT V**

**IN THE ABSENCE OF A CONTRACT, PLAINTIFF'S**
**CLAIMS FOR BREACH OF A CONTRACT ARE ILLUSORY**

Plaintiff's Seventh Cause of Action asserts that Lufthansa breached its own Conditions of Carriage by refusing to contract with Plaintiff for future travel.  In order to establish a breach of contract claim under New York law, Plaintiff must prove (1) formation of a contract between the parties; (2) performance by plaintiff; (3) breach by defendant; and (4) damages.  *Balbut v. Am. Airlines*, 27 F. Supp.2d 146, 153 (E.D.N.Y. 1997).

Lufthansa's Conditions of Carriage, incorporated by reference into Plaintiff's Complaint, apply *only to* passengers who hold a valid ticket to travel on a Lufthansa flight.[3]  For example, Article 2 notes that

> [t]hese Conditions are the Conditions of Carriage referred to in the ticket … and apply only on those flights, or flight segments, where our name or Airline Designator Code (LH) is indicated in the carrier box of the ticket for that flight or flight segment.

*See* Lufthansa's Conditions of Carriage, Art. 2.  Accordingly, the refusal to transport provisions referred to in the Complaint, apply to passengers who have entered into a contract with Lufthansa by way of purchasing a ticket.  Because Plaintiff does not hold a ticket for travel on Lufthansa, he has no contract with Lufthansa, and the general Conditions of Carriage do not apply.  The parties have not formed of a contract, as required to state a claim for breach of contract, and thus, Plaintiff's claim must fail.

---

[3]   Lufthansa's Conditions of Carriage may be found at: http://www.lufthansa.com/online/portal/lh/cmn/generalinfo?nodeid=1818501 (last visited on Feb. 18, 2015). For the ease of reference, a copy of Lufthansa's Conditions of Carriage, obtained from its website on February 18, 2015, is appended hereto as Exhibit A.

## **CONCLUSION**

Based on the foregoing, Deutsche Lufthansa AG respectfully requests that this Court (i) grant the instant motion and dismiss Plaintiff's action with prejudice in its entirety, (ii) award costs and fees to Deutsche Lufthansa AG for bringing this motion, and (iii) award any and all such other relief that this Court deems just and proper.

Dated: New York, New York
      February 18, 2015

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:_____
     Christopher G. Kelly
     Sarah Gogal Passeri
31 West 52nd Street
New York, New York  10019
Tel.:   (212) 513-3200
Fax:    (212) 385-9010
Christopher.Kelly@hklaw.com
Sarah.Passeri@hklaw.com

*Attorneys for Defendant*
*Deutsche Lufthansa AG*

12

Exhibit A



General Conditions of Carriage (Passenger and Baggage)

Frankfurt, November 2014

Publisher:
Deutsche Lufthansa Aktiengesellschaft

Article 1: Definitions

Article 2: Applicability

Article 3: Tickets

Article 4: Fares, Taxes, Fees and Charges

Article 5: Reservations

Article 6: Check-in and Boarding

Article 7: Right to refuse Carriage

Article 8: Baggage

Article 9: Schedules, Delays, Cancellation of Flights

Article 10: Refunds

Article 11: Conduct Aboard Aircraft

Article 12: Arrangements for Additional Services

Article 13: Administrative Formalities

Article 14: Liability for Damage

Article 15: Time Limitations for Claims and Actions

Article 16: Other Conditions

Article 17: Shorttitles

**Article 1: Definitions**
In these Conditions, except where the context otherwise requires or where it is otherwise expressly provided, the following expressions have the meanings respectively assigned to them, that is to say:

**Airline Designator Code**



means the two-characters or three letters which identify particular air carriers.

**Baggage**
means all articles intended for passenger use. Unless otherwise specified, it shall include both checked and unchecked baggage of the passenger.

**Baggage Check**
means those portions of the ticket which relate to the carriage.

**Baggage Tag**
means a document issued by Carrier solely for identification of checked baggage, the baggage (strap) tag portion of which is attached by Carrier to a particular article of checked baggage and the baggage (identification) tag portion of which is given to the passenger.

**"Carrier " or "Operating Carrier"**
means an air carrier other than ourselves, whose Airline Designator Code appears on your Ticket or on a Conjunction Ticket.

**Checked Baggage**
means Baggage of which we take sole custody and for which we have issued a Baggage Tag.

**Check-in Deadline**
means the time limit specified by the airline by which you must have completed check-in formalities and received your boarding pass.

**Code Share**
means carriage by air which will be operated by another carrier as indicated in the ticket. For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Conditions of Contract**
means those statements contained in or delivered with your Ticket or Itinerary/Receipt, identified as such and which incorporate by reference these Conditions of Carriage and notices.

**Conjunction Ticket**
means a Ticket issued to you with relation to another Ticket which together constitute a single contract of carriage.

**Contracting Carrier**
means the Carrier with which the Passenger has concluded a Contract of Carriage and for which the Airline Designator Code appears on the Ticket.

**Convention**
means whichever of the following legal foundations is/are applicable:

- the Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed at Warsaw on October 12, 1929;
- the Warsaw Convention as amended at The Hague on September 28, 1955;
- the Warsaw Convention as amended by Additional Protocol No. 1 of Montreal (1975);
- the Warsaw Convention as amended at The Hague and by Additional Protocol No. 2 of Montreal (1975);
- the Guadalajara Supplementary Convention (1961)
- the Convention for the Unification of Certain Rules for International Carriage by Air signed at Montreal on 28 May 1999 (hereinafter referred to as the Montreal Convention).

**Coupon**



means both a paper Flight Coupon and an Electronic Coupon, each of which entitle you to travel on the particular flight identified on it.

**Damage**
includes death, wounding, or bodily injury to a passenger, loss, partial loss, theft or other damage, arising out of or in connection with carriage or other services incidental thereto performed by us.

**Days**
mean calendar days, including all seven days of the week: provided that, for the purpose of notification, the day upon which notice is dispatched shall not be counted; and provided further that for purposes of determining duration of validity of a Ticket, the day upon which the Ticket is issued, or the flight commenced shall not be counted.

**Electronic Coupon**
means an electronic flight coupon or other value document held in our database.

**Electronic Ticket**
means the Itinerary/Receipt issued by us or on our behalf, the Electronic Coupons and, if applicable, a boarding document.

**Fare**
As described in Article 4.

**Flight Coupon**
means that portion of the Ticket that bears the notation "good for passage", or in the case of an Electronic Ticket, the Electronic Coupon, and indicates the particular places between which you are entitled to be carried.

**Force Majeure**
means unusual and unforeseeable circumstances beyond our control, the consequences of which could not have been avoided even if all due care had been exercised.

**Itinerary Receipt**
means a travel document or documents we issue to Passengers travelling on Electronic Tickets that contains the Passenger's name, flight information and further notices relevant for the journey. This document is to be retained by the passenger and to be carried during the whole journey.

**Passenger**
means any person, except members of the crew, carried or to be carried in an aircraft with our consent.

**Passenger Coupon/Passenger Receipt**
means that portion of the Ticket issued by us on our behalf, which is so marked and which ultimately is to be retained by you.

**SDR**
means a Special Drawing Right as defined by the International Monetary Fund.

**Stopover**
means a scheduled stop on your journey, at a point between the place of departure and the place of destination.

**Tariff**
means the published fares, charges and/or related Conditions of Carriage of an airline filed, where required, with the appropriate authorities. For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.



**Ticket**
means either the document entitled "Passenger Ticket and Baggage Check" or the Electronic Ticket, in each case issued by us or on our behalf, and includes the Conditions of Contract, notices and coupons.

**Unchecked Baggage**
means any of your Baggage other than Checked Baggage.

**"We"**
means Deutsche Lufthansa Aktiengesellschaft.

**"You"**
means any person, except members of the crew, carried or to be carried in an aircraft pursuant to a ticket. (See also definition for "Passenger".)

**Article 2: Applicability**
**General**
2.1. These Conditions are the Conditions of Carriage refered to in the ticket and except as provided in Articles 2.2., 2.4. and 2.5., our Conditions of Carriage apply only on those flights, or flight segments, where our name or Airline Designator Code (LH) is indicated in the carrier box of the Ticket for that flight or flight segment.

**Charters**
2.2. If carriage is performed pursuant to charter agreement, these Conditions of Carriage apply only to the extent they are incorporated by reference or otherwise, in the charter agreement or the Ticket.

**Code Shares**
2.3. On some services we have arrangements with other carriers known as "Code Shares". This means that even if you have a reservation with us and hold a ticket where our name or airline designator code (LH) is indicated as the carrier, another carrier may operate the aircraft. In the event of a Code Share, Lufthansa will advise you of the Carrier operating the aircraft at the time you make your reservation.

For Code Share services on flights operated by another carrier, these Conditions of Carriage shall apply to such transportation. However, Code Share partners may have rules with respect to the operation of its own flights, which may differ from LH's rules for flights operated by Lufthansa. Those rules are incorporated herein by reference and form a part of these Conditions of Carriage.

For the rules and regulations of Lufthansa Code Share partners we refer you to their websites or your travel agency.

You should review the rules for flights operated by another carrier under a Code Share agreement and familiarize yourself with such things as flight check-in time limits, requirements and policies regarding unaccompanied minors, carriage of animals, refusal to transport, oxygen services, irregular operations, denied boarding compensation and baggage allowance/acceptance among others.

Information about Lufthansa's Code Share Partners is available on our Website LH.com.

**Overriding Law**
2.4. These Conditions of Carriage are applicable unless they are inconsistent with our Tariffs or applicable law in which event such Tariffs or laws shall prevail.
If any provision of these Conditions of Carriage is invalid under applicable law, the other provisions shall nevertheless remain valid.

**Conditions Prevail over Regulations**
2.5. Except as provided in these Conditions of Carriage, in the event of inconsistency between these Conditions of Carriage and any other regulations of Deutsche Lufthansa AG, dealing with particular subjects, these Conditions of Carriage shall prevail.



## Article 3: Tickets

### General Provisions

3.1.

3.1.1. We will provide carriage only to the Passenger named on the Ticket and only on presentation of a valid Ticket or, in the case of an electronic booking, of a valid ETIX deposit in the reservation system, which includes the flight coupon for the flight in question, all consecutive flight coupons and the passenger coupon.

3.1.2. A Ticket is not transferable.

3.1.3. Refunds for Tickets which are issued at reduced rates may be limited. For the terms please refer to the respective tariff conditions.

3.1.4. If you have a discounted Ticket, as described in 3.1.3. above and you are prevented from travelling due to Force Majeure, then provided that you have promptly advised us about, and furnished evidence of, such Force Majeure and the Ticket has not yet been used, we will even refund you the part of the fare which, as a general rule, is non-refundable.

3.1.5. The Ticket is and remains at all times the property of the issuing carrier.
The ticket constitutes prima facie evidence of the contract of carriage between the Contracting Carrier and the passenger. The Conditions of Contract contained in the ticket are a summary of the provisions of these Conditions of Carriage.

### Requirement for Ticket

3.1.6. Except in the case of an Electronic Ticket, you shall not be entitled to be carried on a flight unless you present a valid Ticket issued on your name containing the Flight Coupon for that flight and all other unused Flight Coupons and the Passenger Coupon. In addition, you shall not be entitled to be carried if the Ticket presented is mutilated or if it has been altered otherwise than by us or our Authorised Agents. In the case of an Electronic Ticket, you shall not be entitled to be carried on a flight unless you provide positive identification and a valid Electronic Ticket has been duly issued in your name. A flight booking in the electronic reservation system of Deutsche Lufthansa AG is only made a) on request of the passenger by billing his card number (LH Customer Card, Credit Card) and b) by presenting his card at check-in.

### Loss of Ticket or Customer Card

3.1.7. (a) In case of loss or mutilation of a Ticket or part of it by you or non-presentation of a Ticket containing the Passenger Coupon and all unused Flight Coupons, upon your request we will replace such Ticket or part of it by issuing a new Ticket, provided there is evidence, readily ascertainable at the time, that a Ticket valid for the flight(s) in question was duly issued. We may charge a reasonable administration fee but we will not charge the original fare again. We may further request you to sign an agreement to reimburse us for any costs and losses, up to the value of the original ticket, which are necessarily and reasonably incurred by us or another carrier for misuse of the Ticket. We will not claim reimbursement from you for any such losses which result from our own negligence.

3.1.7. (b) Where such evidence is not available or you do not sign such an agreement, the carrier issuing the new Ticket may require you to pay up to the full Ticket price for a replacement Ticket, subject to refund if and when the original issuing carrier is satisfied that the lost or mutilated Ticket has not been used before the expiry of its validity. If, upon finding the original Ticket before the expiry of its validity, you surrender it to the carrier issuing the new Ticket, the foregoing refund will be processed at that time.

3.1.7. (c) When a customer chooses to use a card number for access to his electronic ticket account (LH Customer Card, German Bankcard or Credit Card), any loss or theft of that respective Lufthansa Customer or Credit Card must be reported immediately by the owner to the appropriate Lufthansa office (all Lufthansa Call Centers) in addition to the report at the Bank or Credit Card Company. Once the card has been reported invalid, it cannot be released for use again. Costs arising from misuse of the card before its loss was reported to Lufthansa will be charged to the passenger. Liability rules with other card functions (for example credit card functions) remain unaffected.



**Duty of Care**
3.1.8. A ticket is valuable and you should take appropriate measures to safeguard it and ensure it is not lost or stolen.

**Period of Validity**
3.2.
3.2.1. Except as otherwise provided in the Ticket, these Conditions, or a ticket, in which case the limitation will be shown on the Ticket), a Ticket is valid for:

3.2.1.1. (a) one year from the date of issue; or

3.2.1.1. (b) subject to the first travel occurring within one year from the date of issue, one year from the date of first travel under the Ticket.

3.2.2. When you are prevented from travelling within the period of validity of the Ticket because at the time you request reservations we are unable to confirm a reservation, the validity of such Ticket will be extended, or you may be entitled to a refund in accordance with Article 10.

**Extension of Validity**
3.2.3. If after having commenced your journey, you are prevented from travelling within the period of validity of the Ticket by reason of illness, we may extend the period of validity of your Ticket until the date when you become fit to travel or until our first flight after such date, from the point where the journey is resumed on which space is available in the class of service for which the fare has been paid. Such illness must be attested to by a medical certificate. When the flight coupons remaining in the Ticket involve one or more Stopovers, the validity of such Ticket may be extended for not more than three months from the date shown on such a certificate. In such circumstances, we will similarly extend the period of validity of Tickets of the other members of your immediate family accompanying you.

3.2.4. In the event of death of a Passenger en route, the Tickets of persons accompanying the Passenger may be modified by waiving the minimum stay or extending the validity. In the event of a death in the immediate family of a Passenger who has commenced travel, the validity of the Passenger's Tickets and those of his or her immediate family who are accompanying the Passenger may likewise be modified. Any such modification shall be made upon receipt of a valid death certificate and any such extension of validity shall not be for a period longer than forty-five (45) days from the date of death.

**Changes Requested by Passenger**
3.3

3.3.1. The travel data (flight date, flight number, point of departure and destination, passenger name) recorded on the Ticket are binding and may not be changed at all or, in some circumstances, only upon payment of a change of booking fee.

3.3.2. Should you wish to change any aspect of your carriage, you must contact us in advance. We would especially like to point out that while certain changes may involve increases to the flight price, others may not.

3.3.3. Should you have selected a Tariff which provides for compliance with a fixed Ticket sequence, please note: if carriage is not used on all individual legs or not used in the sequence anticipated on the Ticket with otherwise unchanged travel data, we will recalculate the fare according to your altered routing. The fare will thereby be determined which you would have had to pay for your actual routing in your price group on the day of your reservation. This fare may be higher or lower than the fare you originally paid.

If the price group you originally booked was not available for the altered routing on the day of the booking, the cheapest available former price group for your altered routing will be taken as the basis for the recalculation.



If on the day of the booking for your altered routing, a higher fare would have been determined, we will subsequently recover the difference taking into account the fare already paid. Please note that we can make carriage dependent on whether you have paid this difference in price.

Provided the tariff conditions of your Ticket allow a refund and you have not used your Ticket for a single leg, you may refund your ticket in accordance with the tariff conditions. In this case you will lose any right of carriage.

This Article 3.3.3 does not apply for flights of consumers with place of residence in Austria.

3.3.4. For flights of consumers with permanent place of residence in Austria the following applies:

Should you have selected a Tariff which provides for compliance with a fixed Ticket sequence, please note: if carriage is not used on all individual flights or not used in the sequence anticipated on the Ticket with otherwise unchanged travel data, we will recalculate the fare according to your altered routing. This does not apply if you are unable to fly all individual flights or in the sequence anticipated on the Ticket due to force majeure, illness or for any other reason for which you are not responsible, and if you inform us about and substantiate the relevant reasons immediately after you become aware of them. In case of a recalculation the fare will thereby be determined which you would have had to pay for your actual routing in your price group on the day of your reservation. This fare may be higher or lower than the fare you originally paid.

If the price group you originally booked was not available for the altered routing on the day of the booking, the cheapest available former price group for your altered routing will be taken as the basis for the recalculation.

If on the day of the booking for your altered routing, a higher fare would have been determined, we will subsequently recover the difference taking into account the fare already paid. Please note that we can make carriage dependent on whether you have paid this difference in price.

Provided the tariff conditions of your Ticket allow a refund and you have not used your Ticket for a single leg, you may refund your ticket in accordance with the tariff conditions. In this case you will lose any right of carriage.

**Name and Address of Carrier**
3.4. Our name may be abbreviated to our Airline Designator Code, or otherwise, in the Ticket. Our address shall be deemed to be the airport of departure shown opposite the first abbreviation of our name in the "carrier" box in the Ticket.


**Article 4: Fares, Taxes, Fees and Charges**
**Fares**
4.1. The fare to be paid covers the cost of transporting you from the airport at the actual place of departure to the airport at the actual final destination. It is calculated in accordance with the tariff which is applicable on the day you book your ticket for the flight dates and itinerary shown on your ticket. Your fare does not include ground transport between airports or between airports and city centres. The fare may include carrier imposed charges.

**Taxes, Fees and Charges**
4.2. Applicable taxes, fees and charges imposed by government or other authority, or by the operator of an airport, shall be payable by you. At the time you purchase your Ticket, you will be advised of taxes, fees and charges not included in the fare, most of which will normally be shown separately on the Ticket.

**Currency**
4.3. Subject to applicable law, fares and charges are payable in any currency acceptable to us, unless another currency is indicated by us or the applicable law. When payment is made in the country of departure in a currency other than the currency in which the fare is published, the exchange rate for such payment will be the banker's buying rate set by us on the day the ticket is issued.



## Article 5: Reservations
### Reservation Requirements
5.1.

5.1.1. Each Flight Coupon will be accepted for carriage only in the class of travel stated upon it for the day and flight for which there is a seat reservation. For Tickets where a seat reservation has not been booked, space may be later reserved if a seat is still available on the flight requested.

5.1.2. We or our Authorised Agent will record your reservation(s). Upon request we will provide you with written confirmation of your reservation(s).

5.1.3. Certain fares have conditions which limit or exclude your right to change or cancel reservations. For the individual terms please refer to the respective tarif conditions.

### Ticketing Time Limits
5.2. If you have not paid for the Ticket prior to specified ticketing time limit, as advised by us or the travel agency which issued the Ticket we may cancel your reservation.

### Personal Data
5.3. You recognise that personal data has been given to us for the purposes of: making a reservation, purchasing a Ticket, obtaining ancillary services, developing and providing services, facilitating immigration and entry procedures, and making available such data to government agencies, in connection with your travel. For these purposes, you authorise us to retain and use such data and to transmit it to our own offices, the travel agency which issued the Ticket, government agencies, other Carriers or the providers of the above-mentioned services.

### Reservation Requirements
5.4.

5.4.1 Advance Seat Reservation. Advance Seat Reservation allows passengers to request a specific seat category (eg. window, aisle, middle, seat with more space) from a selection of available seats in their booked cabin class on domestic and international flights operated by Lufthansa. Advance Seat Reservation is subject to availability of requested seats. Depending on the seat category and for some booking classes charges apply for Advance Seat Reservation. There is no obligation for you to make an Advance Seat Reservation.

5.4.2 Complimentary Seat Reservation. In the case of complimentary seat reservations you may request an Advance Seat Reservation, without charge, at the time of check-in. We will endeavour to honour advance seating requests, however, we cannot guarantee any particular seat.

5.4.3 We reserve the right to assign or reassign seats at any time, even after boarding of the aircraft. This may be necessary for operational, safety or security reasons. If you purchased an Advance Seat Reservation and the flight is cancelled, or if seat changes are made by us for operational, safety, or security reasons we will refund the amount you paid for the seat reservation if your desired seat category is not available. If you cancel or rebook your ticket or purchase an upgrade or have made incorrect statements on your ability to sit on emergency exit seats the amount paid for the seat reservation will not be refunded.

### Reconfirmation of Reservations
5.5.

5.5.1. In general we do not require reconfirmation for Lufthansa flights. If other carriers require the passenger to reconfirm onward or return reservations, failure to comply with any such requirement will entitle the carriers to cancel the onward or return reservation.

5.5.2. You should check the reconfirmation requirements of any other Carriers involved in your journey with them. Where it is required, you must reconfirm with the Carrier whose Airline Designator Code appears for the flight in question in the Ticket.

### Cancellation of Onward Reservation and Service Charge when Space not Occupied



5.6. A service charge may be payable by a passenger who:

5.6.1. fails to arrive at Carrier's check-in-location at the airport or other point of departure by the time fixed by Carrier (or if no time fixed, sufficiently in advance of flight departure to permit completion of government formalities and departure procedures) and therefore, does not use space for which a reservation has been made for him, or

5.6.2. appear improperly documented and, therefore, not ready to travel, and as a consequence thereof does not use space for which a reservation has been made for him, or

5.6.3. cancels his reservation later than the time limit for cancellation prescribed by Carrier. The service charge shall not be payable if, due to a flight delay or cancellation, or omission of a scheduled stop, or failure to provide space, the passenger cancels his reservation or, for one of the aforementioned reasons, fails to arrive in time for departure.

## Article 6: Check-in and Boarding
6.1. Check-in Deadlines are different at every airport and we recommend that you inform yourself about these Check-in Deadlines and honour them. Your journey will be smoother if you allow yourself ample time to comply with Check-in Deadlines. We reserve the right to cancel your reservation if you do not comply with the Check-in Deadlines indicated. We or the travel agency which issued the Ticket will advise you of the Check-in Deadline for your first flight on us. Information on check-in deadlines for our flights is available on our website or at the travel agency where the air ticket was issued. Unless otherwise stated, passengers must check in no later than 45 minutes prior to flight departure.

6.2. You must be present at the boarding gate not later than the time specified by us when you check in.

6.3. We may cancel the space reserved for you if you fail to arrive at the boarding gate in time.

6.4. We will not be liable to you for any loss or expense incurred, which is caused solely by you due to your failure to comply with the provisions of this Article, or, if a codeshare flight, your failure to comply with the relevant rules of the Operating Carrier.

## Article 7: Right to refuse Carriage
Right to refuse carriage
7.1. In the reasonable exercise of our discretion, we may refuse to carry you on your journey or onward journey if we have notified you in writing before the booking that we would not at any time after the date of such notice carry you on our flights. This may be the case if you have contravened the rules of behaviour stated in Articles 7 and 11 on an earlier flight and transporting you is therefore unacceptable. Furthermore, we are entitled to refuse to carry you on your journey or onward journey or to cancel your seat booking, if

7.1.1. this measure is necessary for reasons of security or public order or to avert infringement of any applicable laws or conditions governing flights from, into or over individual countries, or

7.1.2. the carriage of you causes security risks, health or discomfort for other passengers, or

7.1.3. the conduct, age, or mental or physical state, including your impairment from alcohol or drugs presents a hazard or risk to yourself, to passengers, to crew, or to property, or

7.1.4. you have committed misconduct on a previous flight, and we have reason to believe that such conduct may be repeated, or

7.1.5. you have refused to submit to a security check, or

7.1.6. you have not paid the applicable fare, taxes, fees or charges, or

7.1.7. you do not appear to have valid travel documents, may seek to enter a country through which you may transit, or for which you do not have valid travel documents, destroy your travel documents during the



flight or refuse to surrender your travel documents to the flight crew, against receipt, when so requested, or

7.1.8. you present a ticket that has been acquired unlawfully, or has been purchased or obtained in breach of the Miles & More membership terms and conditions, or that has been reported as being lost or stolen, is a counterfeit, or if you cannot prove that you are the person named in the ticket, or

7.1.9. you withhold the payment of the difference in amount (surcharge) arising in accordance with 3.3.3 or you present a Ticket which has been issued other than by us or the travel agency which is authorized to issue Tickets, or which is significantly damaged;

7.1.10. you fail to observe our instructions with respect to safety or security,

7.1.11. you fail to observe the non-smoking rule on board our aircraft or use of electronic equipment on board which you are not allowed to.

Lufthansa will not be liable to you if we have exercised our right to refuse carriage according to this Article 7.1. Where Lufthansa has issued your ticket on behalf of another carrier pursuant to interline, codeshare or charter agreements, Lufthansa will not be liable to you if the Operating Carrier of the flight refuses to carry you on the flight.

## Special Assistance
7.2.
7.2.1. Acceptance for carriage of incapacitated persons, persons with illness or requiring special assistance has to be registered with us in advance. Passengers with disabilities who have advised us of any special requirements they may have at the time of ticketing, and been accepted by us, shall not subsequently be refused carriage on the basis of such disability or special requirements.

## Carriage of Children
7.2.2. Children who have not yet reached their 5th birthday may only travel in the company of an adult of at least 18 years or brother or sister of at least 16 years. The carriage of unaccompanied minors (age between five and 12) requires prior arrangement with the carrier, together with payment of the published fee. Regulations governing the carriage of unaccompanied minors can be obtained from Carrier's sales offices.

7.2.3. Children may also travel in their own car-type safety seat on a seat in the cabin; for this, an additional seat must be booked for children under the age of two. The child's safety seat must secured with the aircraft seat belt during the entire flight. It must be suitable for use in the aircraft cabin. Otherwise, we are entitled to refuse to carry it on board. We do not accept any liability for any of the consequences, if the child's own safety seat is incorrectly secured, if it is not fit for purpose or for failure to comply with the instructions.

More information on travelling with children, especially the use in the cabin of suitable children's seats, is available under "Information and Service" on LH.com.

## Recourse when Carriage Refused
7.3. The sole recourse of any person so refused carriage or whose reservation is cancelled for any reason specified in the preceding paragraph shall be recovery of the refund value, in accordance with Article 10.3.

## Article 8: Baggage
## Free Baggage Allowance and Excess Baggage
8.1. You may carry some Baggage, free of charge, subject to our conditions and limitations, which are mentioned in the Ticket or are available upon request from us or the travel agency which issued the Ticket. You will be required to pay a charge for carriage of Baggage in excess of the Free Baggage Allowance. For flights with Lufthansa designator code operated by another carrier (Code Share) the Free Baggage Allowance is indicated on the ticket; Excess Baggage fees are subject to the operating carrier's terms and conditions. These rates are available from us or the travel agency which issued the Ticket upon request. The weight of each piece of baggage may not exceed 32 kilograms.

## Baggage from strangers
8.2. You should refuse to carry, in the checked or the unchecked baggage, packages or objects received



from strangers.

**Items Unacceptable as Baggage**
8.3.
8.3.1. You must not include in your Baggage:

8.3.1.1. items which are likely to endanger the aircraft or persons or property on board the aircraft, such as those specified in the ICAO or IATA Dangerous Goods Regulations which are available from us or the travel agency which issued the Ticket by request. Especially the following items are unacceptable as baggage: explosives, compressed gases, corrosives, oxidizing, radioactive or magnetized materials, materials that are easily ignited, poisonous, offensive or irritating substances, and liquids of any kind (other than liquids in passenger's unchecked baggage for his use in the course of the journey);

8.3.1.2. items the carriage of which is prohibited by the applicable laws, regulations or orders of any state to be flown from or to;

8.3.1.3. items which are reasonably considered by us to be unsuitable for carriage because they are dangerous, unsafe or by reason of their weight, size, shape or character, or which are fragile or perishable having regard to, among other things, the type of aircraft being used. Information about unacceptable items is available from us or the travel agency upon request.

8.3.2. If you are in possession of, or your baggage includes (a) weapons of any kind, in particular side arms and sprays used for offensive or defensive purposes, (b) munitions and explosives, (c) articles which, judging by their outward appearance or markings, appear to be weapons, munitions or explosives, you have to present them to us for inspection, prior to commencement of carriage. We accept such articles for carriage only if they are carried as cargo or checked baggage in accordance with the regulations governing carriage of dangerous goods. Sentence 2 shall not apply to police officers who, in performance of their official duties, are required to carry arms. During the flight they shall hand over their arms to the pilot in command.

8.3.3. Firearms and ammunition other than for hunting and sporting purposes are prohibited from carriage as Baggage. Firearms and ammunition for hunting and sporting purposes may be accepted as Checked Baggage. Firearms must be unloaded with the safety catch on, and suitably packed. Carriage of ammunition is subject to ICAO and IATA regulations as specified in 8.3.1.1.

8.3.4. We are not liable for any items referred to in 8.3.1. and 8.3.2. if these, despite being prohibited, are deliberately included in your baggage.

**Right to Refuse Carriage**
8.4.
8.4.1. Subject to paragraph 8.3.2 and 8.3.3., we will refuse to carry as Baggage the items described in 8.3., and we may refuse further carriage of any such items upon discovery.

8.4.2. We may refuse to carry as Baggage any item reasonably considered by us to be unsuitable for carriage because of its size, shape, weight, content, character, or for safety or operational reasons, or the comfort of other passengers. Information about unacceptable items is available upon request.

8.4.3. We may refuse to accept Baggage for carriage unless it is in our reasonable opinion properly and securely packed in suitable containers.

**Search of Passengers and Baggage**
8.5. If the passenger is unwilling to comply with a request to permit a search to be made of his person or his baggage to determine the presence of articles which are inadmissible according to or which have not been presented in accordance with paragraph 8.3. We may refuse to carry the passenger or his baggage and in that event we shall be under no liability to the passenger except to refund him in accordance with Article 10.3. of these Conditions of Carriage.

**Checked Baggage**



8.6.
8.6.1. Upon delivery to us of baggage to be checked we shall take custody thereof. We will there upon make an appropriate entry on the ticket which act shall constitute the issue of the baggage check. Baggage (identification) tags that may be issued by us in addition to the baggage check are for identification purposes only.

8.6.2. Checked Baggage must have your name or other personal identification affixed to it.

8.6.3. Checked Baggage will, whenever possible, be carried on the same aircraft as you, unless we decide for safety, security or operational reasons to carry it on an alternative (if possible the next) flight. If your Checked Baggage is carried on a subsequent flight we will deliver it to you, unless applicable law requires you to be present for customs clearance. Article 14 (Liability for Damage) remains unaffected.

**Unchecked Baggage**
8.7.
8.7.1. We may specify maximum dimensions for Baggage which you carry on to the aircraft. If we have not done so, Baggage you carry onto the aircraft must fit under the seat in front of you or in an enclosed storage compartment in the cabin of the aircraft. If your Baggage cannot be stored in this manner, or is of excessive weight, or is considered unsafe for any reason, it must be carried as Checked Baggage.

8.7.2. Objects not suitable for carriage in the cargo compartment (such as delicate musical instruments), and which do not meet the requirements in 8.7.1. above, will only be accepted for carriage in the cabin compartment if you have given us notice in advance and permission has been granted by us. You may have to pay a separate charge for this service.

**Delivery of Checked Baggage**
8.8.
8.8.1. You are required to collect your Checked Baggage as soon as it is made available at you destination or stopover.

8.8.2. We shall deliver checked baggage to the bearer of the baggage check upon payment of all unpaid sums due to us under the Contract of Carriage.

8.8.3. If a person claiming the baggage is unable to produce the baggage check and identify the baggage by means of a baggage (identification) tag, if one has been issued, we will deliver the baggage to such person only on condition that he establishes to our satisfaction his right thereto.

**Pets and Assistance Dogs**
8.9.
8.9.1. The acceptance of pets (dogs, cats and other animals) for transport is subject to our approval and the following conditions:

The animals shall be properly crated and accompanied by valid health/vaccination certificates, entry permits, and other documents required by the countries of entry or transit. We reserve the right to determine the manner of carriage and to limit the number of pets which may be carried on a flight.

8.9.2. The weight of pets, containers and food, shall not be included in the free baggage allowance of the passenger. Its transportation shall be paid for at the rate applicable to excess baggage.

8.9.3. A recognized assistance dog required by the passenger will be accepted without charge for transportation in the cabin to the extent feasible; please take note of Article 8.9.5

8.9.4. On flights to or from the USA you may take along an Emotional Support or Psychiatric Service dog in the cabin, without charge if the following requirements are met:

Passengers travelling with an emotional support or psychiatric service dog shall provide current



documentation (i.e., not older than one year from the date of the Passenger's scheduled initial flight) to LH on the letterhead of a licensed mental health professional (e.g., psychiatrist, psychologist, licensed clinical social worker, including a medical doctor specifically treating the passenger's mental or emotional disability) stating the following: (1) the passenger has a mental or emotional disability recognized in the Diagnostic and Statistical Manual of Mental Disorders-Fourth Edition (DSMIV); (2) the Passenger needs the emotional support or psychiatric service dog as an accommodation for air travel and/or for activity at the Passenger's destination; (3) the individual providing the assessment is a licensed mental health professional and the Passenger is under his or her professional care; and (4) the date and type of the mental health professional's license and the state or other jurisdiction in which it was issued. LH reserves the right to authenticate any documentation presented.

Please take note of Article 8.9.5

If you are travelling  with an assistance or emotional support dog, please contact us at least 48 hours' prior to the departure of your flight and present yourself at the check in at least 1 hour before the indicated check-in deadline.

8.9.5 Please note that it is essential for the safe and undisrupted operation of a flight that your animal is trained to behave properly in public settings. In order to travel with you in the cabin your animal must be obedient and behave properly. If your animal misbehaves you may be asked to put its muzzle on for the transport, your animal may be transported in the cargo compartment (if a kennel is available), or carriage may be denied.

Animals travelling with you in the cabin (including container for transport, if applicable) shall fit in the footspace of your seat and shall be appropriately secured during the entire stay on board.

8.9.6. You assume full responsibility for the safety, health, and conduct of your animal, and for compliance with all governmental requirements, regulations, or restrictions, including entry/exit permits and required health certificates of the respective countries, states, or territories.

You shall be liable for all  expenses due to your failure to comply with this provision, as well as for any damage your animal causes, and you shall indemnify us against all liability whatsoever, unless caused by the gross negligence or intentional misconduct of LH.

## Article 9: Schedules, Delays, Cancellation of Flights
### Schedules
9.1.
Before we accept your booking, we will notify you of scheduled flight time in effect as of the time, and it will be shown on your Ticket. If you provide us with contact information, we will endeavour to notify you of any such changes. If, after you purchase your Ticket, we make a significant change to the scheduled flight time, which is not acceptable to you, you will be entitled to a refund in accordance with Article 10.2.

### Cancellation, Rerouting, Delays, etc.
9.2.
We will take all necessary measures to avoid delay in carrying you. In the exercise of these measures and in order to prevent a flight cancellation we may arrange for a flight to be operated on our behalf by an alternative carrier and/or aircraft.

### Notification
9.3
In the event of a flight delay, cancellation, or diversion, Lufthansa will provide the most current information available to customers in the airport or onboard an aircraft in a timely manner. Flight information may also be obtained by visiting the Lufthansa web site (www.lufthansa.com/us).



## Article 10: Refunds
### Generals
10.1.
We will refund a Ticket or any unused portion, in accordance with the applicable fare rules or Tariff, as follows:

### Person to whom refund will be made
10.1.1.
Except as otherwise provided in this Article, we shall be entitled to make a refund either to the person named in the Ticket or, to the person who has paid for the Ticket, upon presentation of satisfactory proof of such payment.

10.1.2.
If a Ticket has been paid for by a person other than the passenger named in the Ticket, and the Ticket indicates that there is a restriction on refund, we shall make a refund only to the person who paid for the Ticket, or to that person's order.

10.1.3.
Except in the case of a lost Ticket, refunds will only be made on surrender to us of the Ticket and all unused Flight Coupons.

10.1.4.
A refund made to anyone presenting the passenger coupon and all unused flight coupons and holding himself out as a person to whom refund may be made in terms of subparagraphs 10.1.1. or 10.1.2. shall be deemed a refund to such person.

### Involuntary Refunds
10.2.
10.2.1.
If we cancel a flight, fail to operate a flight reasonably according to schedule, fail to stop at your destination or Stopover, or cause you to miss a connecting flight which you hold a reservation, the amount of the refund shall be:

10.2.1.1.
if no portion of the Ticket has been used, an amount equal to the fare paid,

10.2.1.2.
if a portion of the Ticket has been used, the refund will be not less than the difference between the fare paid and the applicable fare for travel between the points for which the Ticket has been used.

### Voluntary Refunds
10.3.
10.3.1.
If you request a refund for reasons other than those mentioned under clause 10.2.1. of this section, the amount of the refund will thus correspond provided the respective fare conditions provide for this:

10.3.1.1. if no portion of the Ticket has been used, an amount equal to the fare paid, less any reasonable service charges or cancellation fees;

10.3.1.2.
if a portion of the Ticket has been used, the refund will be an amount equal to the difference between the fare paid and the applicable fare for travel between the points for which the Ticket has been used, less any reasonable service charges or cancellation fees.

### Refund on Lost Ticket
10.4.1.
If a Ticket or portion thereof is lost, a refund will be made on proof of loss satisfactory to Carrier and payment



of the applicable fee, provided that:

10.4.1.1.
the lost Ticket or portion thereof has not been used or previously refunded or replaced without charging the ticket fare again (except where the use, refund or replacement by or to a third party resulted from our own negligence).

10.4.1.2.
the person to whom the refund is made undertakes, in such form as may be prescribed by us, to repay to us the amount refunded in the event of fraud and/or to the extent that the lost Ticket or portion of it is used by a third party (except where any fraud or use by a third party resulted from our own negligence). In this case a reasonable service charge will be debited to you.

10.4.2.
If we or our Authorized Agent lose the Ticket or a portion of it, the loss shall be our responsibility.

**Refusal of Refunds**
10.5.
10.5.1.
We may refuse refund when application therefore is made later than six months after the expiry of the validity of the ticket.

10.5.2.
We may refuse a refund on a Ticket which has been presented to us, or to Government officials, as evidence of intention to depart from that country, unless you establish to our satisfaction that you have permission to remain in the country or that you will depart from that country by another means of transport.

**Currency**
10.6.
All refunds will be subject to government laws, rules and regulations or orders of the country in which the ticket was originally purchased and to the country in which the refund is being made. Subject to the foregoing provision, refunds will be made in the currency in which the fare was paid.

**By whom Ticket Refund**
10.7.
Voluntary refunds will be made only by the carrier which originally issued the Ticket or by its agent if so authorised.

**Refund to Credit Cards Accounts**
10.8.
Refund due to tickets paid for with credit cards can only be credited to credit card accounts originally used for the ticket purchase. The refundable amount to be paid by us will be in accordance with the rules within this article only on the basis of the amount and the currency entered in the ticket. The refundable amount to be credited to the credit card account of the card owner can vary from the originally debited amount by the credit card company for the ticket due to differences in conversion. Such variances do not entitle the recipient of the refund to a claim against us.

**Article 11: Conduct Aboard Aircraft**

**General**
11.1.
If, in our reasonable opinion you conduct yourself aboard the aircraft so as to endanger the aircraft or any person or property on board, or obstruct the crew in the performance of their duties, or fail to comply with any instructions of the crew including but not limited to those with respect to smoking, alcohol or drug consumption, or behave in a manner which causes discomfort, inconvenience, damage or injury to other passengers or the crew, we may take such measures as we deem reasonably necessary to prevent continuation of such conduct, including restraint. You may be disembarked and refused onward carriage at



any point, and may be prosecuted for offences committed on board the aircraft.

**Electronic devices**
11.2.
The use of cell phones, transmission devices and remote-control toys on board is prohibited. The use of cell phones is only permitted if the aircraft equipped with functioning mobile telecommunication technology. Please pay attention to crew announcements and written information on board at all times, such as the FlyNet Guide. Making VoIP calls is prohibited nor is it possible, since the technology has been disabled. Video cameras, laptops, MP3 players, CD player and computer toys are allowed when the Fasten Seat Belts sign has been turned off.

**Non-Smoking Flights**
11.3.
All Lufthansa flights are Non-Smoking Flights. Smoking is prohibited in all areas of the aircraft.
This does also apply for electronic cigarettes.

**Own Alcohol**
11.4.
Consumption of alcohol purchased prior to your flight is not permitted on board of the aircraft.

**Seat belts compulsory**
11.5.
As a general rule you are requested to remain seated during the entire flight and you are obliged to fasten your seat belts while seated.


**Article 12: Arrangements for Additional Services**
12.1.
If we make arrangements for you with any third party to provide any services, like issuing a ticket or voucher relating to transportation or services, in doing so we act only as your agent. The terms and conditions of the third party service provider will apply.

12.2.
If we are also providing surface transportation to you, these conditions apply to such surface transportation. Such conditions are available from us upon request.

**Article 13: Administrative Formalities**
**General**
13.1.
13.1.1.
You are responsible for obtaining all required travel documents and visas and for complying with all laws, regulations, orders, demands and travel requirements of countries to be flown from, into or through which you transit. Further, it is the passenger's responsibility to ensure that their travel documents and visas will remain valid for the entirety of their travel, accounting for the possibility of flight disruptions. Lufthansa is not liable for the passenger's failure to take reasonable precautions to ensure that their travel documents and visas remain valid.

13.1.2.
We shall not be liable for any and all consequences, however remote, to any passenger arising from his or her failure to obtain and carry with them necessary valid travel documents or visas or to comply with such laws, regulations, orders, demands, requirements, rules or instructions.


**Travel Documents**
13.2.
Prior to travel. you must present all exit, entry, health and other documents required by law, regulation, order, demand or other requirement of the countries concerned, and permit us to take and retain copies thereof.



We reserve the right to refuse carriage if you have not complied with these requirements, or your travel documents do not appear to be in order.

### Refusal of Entry
13.3.
If you are denied entry into any country, you will be responsible to pay for the cost of transporting you from that country. We may apply to the payment of such fare any funds paid to us for unused carriage, or any funds of the passenger in the possession of us. The fare collected for carriage to the point of refusal of entry or deportation will not be refunded by us.

### Passenger responsible for Fines, etc.
13.4.
If we are required to pay any fine or penalty or to incur any expenditure by reason of your failure to comply with the laws or regulations on entry to or travel through the country concerned, or to produce the required documents in the proper form, you shall reimburse us on demand any amount so paid or expenditure so incurred as well as an administration fee. If the Passenger fails to reimburse us we may seek reimbursement from the person who has paid for the Ticket. We may apply towards such payment or expenditure the value of any unused part of your ticket or any of your funds in our possession. The value of the fine or penalty can vary from country to country and may greatly exceed the fare paid. In your own interests, therefore, please ensure that you observe the entry regulations of the country to which you are travelling.

### Customs Inspection
13.5.
If required, you shall attend inspection of your Baggage, by customs or other Government officials. We are not liable to you for any loss or damage suffered by you in the course of such inspection or through your failure to comply with this requirement.

### Security Inspection
13.6.
You are obliged to submit to any security checks by Governments, airport officials, Carriers or by us.

### Transmission of Passenger Data
13.7.
We are entitled to transmit your personal data and all personal reservation data in connection with your flight to domestic and foreign authorities (including USA and Canada) if these authorities request us to do so due to compelling legal rules and regulations in order to fulfil the contract of carriage.

### Article 14: Liability for Damage
### General
14.1.1.
The liability of Deutsche Lufthansa AG and each Carrier involved in your journey will be determined by its own Conditions of Carriage.
14.1.2.
Unless otherwise stated herein, international travel, as defined in the Convention, is subject to the liability rules of the Convention.

14.1.3.
Any liability we have for Damage, will be reduced by any negligence on your part which causes or contributes to the Damage in accordance with applicable law.

14.1.4.
We are liable only for damage occurring on our own flights. If we issue a ticket or check baggage over the lines of another Carrier we do so only as an agent for such other Carrier. Nevertheless, with respect to checked baggage the passenger shall also have a right of action against the first or last Carrier.

14.1.5.
If the air carrier actually performing the flight is not the same as the contracting air carrier, you have the right to address a complaint or to make a claim for damage against either. If the name or code (Code Share) of



an air carrier is indicated on the ticket, that air carrier is the contracting carrier.

14.1.6.
We are not liable for any damage arising from its compliance with any laws or government regulations, orders or requirements, or from failure of the passenger to comply with the same.

14.1.7.
Our liability shall not exceed the amount of proven damages under any circumstances. We are only liable for indirect or consequential damages when such damage was caused by our gross negligence or wilful misconduct; the provisions of the Convention shall continue to be applicable without change.

14.1.8.
Any exclusion or limitation of liability of us shall apply to and be for the benefit of agents, servants and representatives of us and any person whose aircraft is used by us and such person's agents, servants and representatives. The aggregate amount recoverable from us and from such agents, servants, representatives and persons shall not exceed the amount of our limit of liability.

14.1.9.
Unless so expressly provided nothing herein contained shall waive any exclusion or limitation of liability of us under the Convention or applicable laws.

## Compensation in Case of Death or Injury
14.2
14.2.1.
There are no financial limits to the liability for passenger injury or death. For damages up to 113,100 SDRs (approximate 121.243 EUR) the air carrier cannot contest claims for compensation. Above the amount, the air carrier can defend itself against a claim by proving that it was not negligent or otherwise at fault.

14.2.2.
If a passenger is killed or injured, the air carrier must make an advance payment, to cover immediate economic needs, within 15 days from the identification of the person entitled to compensation. In the event of death, this advance payment shall not be less than 16,000 SDRs (approximate 17.600 EUR)

## Destruction, Loss or Damage to Baggage
14.3
14.3.1.
We are liable for destruction, loss or damage to baggage up to 1,131 SDRs (approximate 1,213EUR). In the case of checked baggage, we are liable even if not at fault, unless the baggage was defective. In case of unchecked baggage, the carrier is liable only if at fault.

## Higher Limits for Baggage
14.3.2.
A passenger can benefit from a higher liability limit by making a special declaration at the latest at check-in and by paying a supplementary fee.

## Complaints on Baggage
14.3.3.
If the baggage is damaged, lost or destroyed the passenger must write and complain to the air carrier as soon as possible. In case of damage to checked baggage, the passenger must write and complain within seven days and in case of delay within 21 days, in both cases from the date on which the baggage was placed at the passenger's disposal.

14.3.4.
We are not liable for damage to a passenger's baggage caused by property contained in passenger's baggage unless we caused such damage by our gross negligence or wilful misconduct. Any passenger whose property causes damage to another passenger's baggage or to the property of us shall indemnify us for all losses and expenses incurred by us as a result thereof.



**Passenger and Baggage Delays**
14.4.
14.4.1.
In case of passenger delay we are liable for damage unless we took all reasonable measures to avoid damage or it was impossible to take such measures. The liability for passenger delay is limited to 4,694 SDRs (approximate 5,032 EUR).

14.4.2.
In case of a baggage delay we are liable for damage unless we took all reasonable measures to avoid the damage or it was impossible to take such measures. The liability is limited to 1,131 SDRs (approximate 1.213 EUR).

14.4.3.
In the event claimant fails to mitigate damages or has contributed to the emergence of damage, the amount of the claims for damages shall be reduced by the amount which relates to the claimant's contribution. In particular,  claimant is obligated to make timely, reasonable and adequate replacement purchases.

**Non-Carriage due to Overbooking**
14.5.
14.5.1.
The carrier will give priority to unaccompanied children, ill and handicapped people. In all other cases, passengers will be allocated a seat on the aircraft in the order in which they check in, also taking into account any specific interests.

14.5.2.
When we reasonably expect to deny boarding on a flight, we first call for volunteers to surrender their reservation in exchange for benefits.

**Cancellation**
14.6.
In case of flight cancellation we will endeavor to rebook you on another aircraft, on another carrier's flight or by any other means of carriage.

**Article 15: Time Limitations for Claims and Actions**
**Notice of Claims**
15.1.
If you accept the baggage delivered to you unconditionally, we take for granted as long as opposite not proven, that it was delivered to you in good condition and according to the contract of carriage.
No action shall lie in the case of damage to baggage unless the person entitled to delivery complains to Carrier forthwith after the discovery of the damage, and, in international air travel at the latest within seven days from the date of receipt; and in the case of any damage resulted due to delay, unless the complaint is made at the latest within 21 days from the date on which the baggage has been placed at his disposal. Every complaint must be made in writing and dispatched within the times aforesaid.

**Limitation of Actions**
15.2.
Any right to damages shall be extinguished if an action is not brought within two years reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped. The method of calculating the period of limitation shall be determined by the law of the court assigned the case.

**Article 16: Other Conditions**
Carriage is also provided in accordance with certain other regulations and conditions applying to or adopted by us. These regulations and conditions which may vary from time to time are important. They concern among other things: the carriage of unaccompanied minors, pregnant women, and sick passengers, restrictions on use of electronic devices and items, the on board consumption of alcoholic beverages.



Regulations and conditions concerning these matters are available from us upon request.

**Article 17: Shorttitles**
The shorttitles of each Article of these Conditions are for convenience only, and are not to be used for interpretation of the text.